UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>v.<br><br>GALDINO GARCIA NAVA,<br><br>                              Defendant. | Case No.: 19-CR-2034-GPC<br><br>**ORDER GRANTING MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)**<br><br>[ECF No. 54] |

## INTRODUCTION

Defendant Galdino Garcia Nava filed a motion seeking reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(1). ECF No. 54. The government requests the Court defer its decision, or in the alternative, deny the motion. ECF No. 60 at 1, 6.[1] The Court GRANTS the motion.

---

[1] Page numbers refer to CM/ECF pagination.

1

## BACKGROUND

Garcia Nava pleaded guilty to knowingly and intentionally importing over 500 grams of methamphetamine, over 1 kilogram of heroin, and 40 grams of fentanyl. ECF No. 30 at 2. On October 2, 2020, the Court sentenced him to 120 months concurrent on each count, followed by five years of supervised release on two counts and four years on the third, to run concurrently. ECF No. 43.

During the sentencing hearing, the Court emphasized Garcia Nava's personal history. ECF No. 54-1 at 14-15; *see also* ECF No. 54 at 3-9. Because of an accident when he was six, Garcia Nava has visible third-degree burns over much of his body, including his face. ECF No. 54-1 at 14-15; ECF No. 54 at 3. As a result, he was hospitalized for over a year, and he continues to receive specialized treatment at age thirty. ECF No. 54 at 3-4; ECF No. 59 at 8-9; ECF No. 34 at 3. As a teenager, Garcia Nava began abusing alcohol and other drugs, including methamphetamines. ECF No. 54 at 4-5. This led to a conviction for drug trafficking in 2012 and an accompanying 14-month sentence. ECF No. 34 at 7. He overcame his addiction during his first time in prison and no longer uses. *See* ECF No. 54-1 at 15. Garcia Nava is now married and acts as a father to three teenage stepchildren. ECF No. 54 at 5. His wife and stepchildren live in Mexico and prior to his arrest he sent most of his earnings to them and his parents. *Id.* His sentencing memo suggested that he committed the instant crime because of financial difficulties. ECF No. 41 at 2.

At sentencing, both parties and probation recommended the statutory minimum sentence of 120 months, a sentence below the guidelines range, which the Court granted. ECF No. 54-1 at 13, 18 (sentencing transcript); ECF No. 40 at 1 (government sentencing memo); ECF No. 41 at 2 (defense sentencing memo); ECF No. 34 at 15 (PSR); 21 U.S.C. §§ 952, 960(b). In varying, the Court noted Garcia Nava's burns and the physical and psychological harm they caused, his recovery from a methamphetamine addiction, and

that he appeared to have had a minor role in the incident even though he did not provide sufficient information to obtain the minor role reduction. ECF No. 54-1 at 13-18. The Court stated that it understood Garcia Nava's unwillingness to meet his burden to show minor role because of his fear of the cartels, especially because it would have been "an exercise in futility" due to the mandatory minimum. *Id.* at 14.

Because the sentencing took place prior to *United States v. Lopez*, 998 F.3d 431 (9th Cir. 2021), the Court did not consider Garcia Nava eligible for safety valve and therefore could not vary below the statutory minimum of 120 months. ECF No. 34 at 6, 18 (PSR); ECF No. 41 at 2 n.1 (defense sentencing memo). Still, the Court expressed substantial hesitation in imposing the 120-month sentence. *See* ECF No. 54-1 at 17 ("I don't think anyone takes a position, including [the AUSA], that we need a 120-month sentence for purposes of either specific or general deterrence."); *id.* ("[Y]ou have the bad fortune, among other things, to end up committing this crime at a time when the judgment exercised by the Department of Justice produced the charges[.]").

In prison, Garcia Nava has finished the coursework towards his GED and put over 700 hours into studying to be an electrician,[2] ECF No. 54-1 at 53, and he has no serious or violent disciplinary history. ECF No. 54 at 12-13; ECF No. 54-1 at 49. He has gout, diabetes, and hyperlipidemia,[3] and lasting health complications from his burn injuries, all of which require chronic but fairly minor treatment. ECF No. 59 at 57 (sealed). The treatment is not always timely delivered. ECF No. 54 at 32-33. Upon release, he has a solid re-entry plan: a place to live with supportive family members and a job waiting for

---

[2] He is still waiting on the results of his GED exam. ECF No. 54 at 10.

[3] Garcia Nava's motion states that he has hypertension, but medical records indicate that the has hyperlipidemia, not hypertension. ECF No. 59 at 57 (sealed).

3

19-CR-2034-GPC

him. ECF No. 55 at 3 (open offer of employment from Green City Landscaping); ECF No. 54-1 at 77 (Decl. of Dolegario Gonzalez offering a place to stay).

Garcia Nava moved for compassionate release on July 18, 2023. ECF No. 54. The government responded and Garcia Nava replied. ECF Nos. 60-61. Garcia Nava also filed a supplemental brief following the effective date of the amendments to the Sentencing Guidelines, ECF No. 62, and later a supplemental exhibit, ECF No. 63. He has served about 39 months of his 120-month sentence thus far. ECF No. 54-1 at 34; ECF No. 62 at 6.

## DISCUSSION

### I. Legal Standard

Garcia Nava moves for release under 18 U.S.C. § 3582(c)(1), which permits a sentence reduction, after considering the 18 U.S.C. § 3553(a) sentencing factors, upon a showing of "extraordinary and compelling reasons" if "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission" and if the defendant has exhausted administrative remedies. There is no dispute that Garcia Nava has met the administrative exhaustion requirement, ECF No. 60 at 3 (government response); ECF No. 54-1 at 36-40 (letters to the warden), so the question before the Court is whether Garcia Nava has demonstrated extraordinary and compelling reasons for a sentence reduction consistent with the Sentencing Guidelines' policy statements.

The policy statements in U.S.S.G. § 1B1.13, as amended effective November 1, 2023, provide that extraordinary and compelling reasons include: (1) medical circumstances of the defendant where the defendant suffers from severe or chronic illness; (2) age of the defendant where the defendant is at least sixty-five years old; (3) family circumstances of the defendant where there is no one other than the defendant to care for a family member; (4) victim of abuse where the defendant has been assaulted in prison by a Bureau of Prisons ("BOP") employee; (5) other reasons of similar gravity,

either independently or collectively; and (6) an unusually long sentence.  The policy statements also order that, to reduce a sentence, the court must determine that "[t]he defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(a)(2).

Prior to the most recent amendments, the Ninth Circuit held that the policy statements were not binding on courts where the defendant brought the motion because the policy statements addressed only motions brought by the BOP.  *United States v. Aruda*, 993 F.3d 797, 801 (9th Cir. 2021).  However, the amendments clarify that the policy statements apply to motions brought by both the BOP and defendants, fixing the issues previously identified by the Ninth Circuit.  *See* U.S.S.G. § 1B1.13(a) ("Upon motion of the Director of the Bureau of Prisons *or the defendant* . . ." (emphasis added)). This indicates that the policy statements are now binding.  *See United States v. Chavez*, No. 18-CR-5436, 2024 WL 24065, at *3 (S.D. Cal. Jan. 2, 2024); 28 U.S.C. § 994(t); *see also id.* § 994(a)(2)(c).  Nonetheless, the Court "retains substantial discretion to determine what constitutes 'extraordinary and compelling reasons'" pursuant to U.S.S.G. § 1B1.13(b)(5), under which "a court may conclude that 'any . . . circumstance or combination of circumstances that, when considered by themselves or together . . . are similar in gravity to" the reasons explicitly enumerated.  *United States v. Courtway*, No. 18-CR-4687, 2023 WL 8772931, at *7 (S.D. Cal. Dec. 19, 2023) (quoting U.S.S.G. § 1B1.13(b)(5)).

**II.  Analysis**

Garcia Nava moves for compassionate release primarily because if he had been sentenced after the Ninth Circuit issued *United States v. Lopez*, 998 F.3d 431 (9th Cir. 2021), he would have been safety-valve eligible and he argues that the Court would have sentenced him below the mandatory minimum.  ECF No. 54 at 18.  He points out that his sentence is unusually long compared to other offenders with similar profiles.  *Id.* at 27.

And he contends that this disparity, independently or combined with his significant rehabilitation, his medical conditions, and the harsher conditions of confinement due to COVID-19 amount to extraordinary and compelling reasons. ECF No. 54 at 28-35; ECF No. 59 at 8-13 (sealed). The Court finds that collectively, these circumstances constitute extraordinary and compelling reasons.

*Lopez* interpreted the safety valve provision, 8 U.S.C. § 3553(f)(1), and held that a defendant is *in*eligible for safety valve only if they have "more than four criminal-history points, a prior three-point offense, *and* a prior two-point violent offense." 998 F.3d at 433 (emphasis added). Before *Lopez* this Court held that any one of these conditions made a defendant ineligible. Because Garcia Nava has a prior three-point offense, ECF No. 34 at 7, he was ineligible for safety valve under this Court's interpretation of § 3553(f)(1), but would have been eligible once *Lopez* was issued. The statutory interpretation question presented in *Lopez*—whether the "and" in § 3553(f)(1) is conjunctive or disjunctive—is currently on review in the Supreme Court. *See Pulsifer v. United States*, 143 S. Ct. 978 (2023) (granting the writ of certiorari). The Supreme Court heard oral argument on October 2, 2023 and will release a decision sometime this term. *No. 22-340*, Supreme Court Docket, https://www.supremecourt.gov/docket/docketfiles/html/public/22-340.html (last visited Nov. 28, 2023).

The government argues that the Court should wait until the Supreme Court has decided *Pulsifer* to issue an order, because *Pulsifer* may overrule *Lopez*, substantially undercutting Garcia Nava's motion. ECF No. 60 at 1-2, 5-8. Garcia Nava responds that *Lopez* is currently the law of this Circuit, other judges in this district have applied *Lopez* since the Supreme Court granted certiorari in *Pulsifer*, and there is therefore no reason to wait to decide the motion. ECF No. 61 at 3-5. The Court agrees and will not defer its decision. It is bound by the law of this Circuit as it currently stands and will not force

Garcia Nava to wait potentially a year for decision on his motion. *See Courtway*, 2023 WL 8772931, at *4 (declining to defer until the Supreme Court's decision in *Pulsifer* a compassionate release motion based in part on a sentencing disparity due to *Lopez*).

### a. Garica Nava presents extraordinary and compelling reasons.

The fact that Garcia Nava would likely have received less than the mandatory minimum if he had been sentenced after *Lopez* and the sentencing disparity between him and other similarly situated defendants, along with his medical issues, rehabilitation, and the harsher conditions of confinement due to COVID-19, *id.* at 28-35, constitute extraordinary and compelling reasons to grant a sentence reduction.

This Court and others in this district have previously found extraordinary and compelling reasons meriting sentence reduction in part due to the disparity between the sentence a defendant received and the sentence that defendant likely would have received with safety valve eligibility, if they had been sentenced following *Lopez*. *Courtway*, 2023 WL 8772931, at *7-*10; *United States v. Pinal-Maldonado*, No. 17-CR-3431, 2023 WL 6931783, at *4 (S.D. Cal. Oct. 19, 2023); *United States v. Wright*, No. 19-CR-4286, 2022 WL 673265, at *4 (S.D. Cal. Mar. 7, 2022); *United States v. Vascones*, No. 18-CR-5176, 2022 WL 1004236, at *2 (S.D. Cal. Apr. 4, 2022); *United States v. Gloria Blancas de Hernandez*, No. 17-CR-2110, 2021 WL 2290778, at *3 (S.D. Cal. June 4, 2021); *United States v. Rosas*, No. 17-CR-3431, 2020 WL 7226438, at *3 (S.D. Cal. Dec. 8, 2020). The Court holds that the same applies here.

As the record demonstrates, "the [C]ourt believed then[,] and finds now that a 120-month sentence[] was greater than necessary." *United States v. Vascones*, 2022 WL 1004236, at *2. During sentencing, both parties and the Court acknowledged that the mandatory minimum sentence was harsh, especially given Garcia Nava's personal history. *See* ECF No. 54-1 at 17 ("I don't think anyone takes a position, including [the AUSA], that we need a 120-month sentence for purposes of either specific or general

deterrence.") (statement of the Court); *id.* at 12 ("I never take any pleasure in any of these sentences.  It is more sobering because of the fact of the mandatory minimum in this case.") (statement by the prosecutor).  Garcia Nava has visible third-degree burns over much of his body, overcame an addiction to methamphetamines, and by all accounts is a caring husband, stepfather, and son. *Id.* at 14-15; ECF No. 54 at 5.  His crime was non-violent, and he appeared to have only a minor role in the incident.  ECF No. 34 at 4.  Thus, the Court is very likely to have ordered a sentence below 120 months if the mandatory minimum did not apply.[4]

Moreover, in part because of *Lopez*, Garcia Nava's sentence is roughly three times longer than the sentence of similarly-situated defendants who were sentenced from 2020 to 2022.  Data from the U.S. Sentencing Commission shows that defendants convicted in this district of similar crimes and with similar criminal histories had an average sentence of 41 months in 2020, 33 months in 2021, and 38 months in 2022.  *Sentencing Outcomes: Sentence Length*, Interactive Data Analyzer, U.S. Sent'g Comm'n, https://ida.ussc.gov/analytics/saw.dll?Dashboard (last visited Nov. 17, 2023).  In contrast, Garcia Nava was sentenced to 120 months.

This disparity with the sentence he would likely have received under *Lopez* and with other defendants strongly supports the existence of extraordinary and compelling circumstances.  The combination of the disparity with the other factors Garcia Nava raises persuades the Court that extraordinary and compelling reasons to reduce his

---

[4] It is true that Garcia Nava did make the required proffer for safety valve eligibility.  "However, the defendant had no incentive to do so as the parties concluded []he was not eligible for safety valve and the sentencing recommendation was for the mandatory minimum.  The court cannot rewrite the history of this case.  However, the defendant will not be excluded from relief []he could otherwise have earned due to what was subsequently determined to be a misapplication of the law by counsel and the court." *Vascones*, 2022 WL 1004236, at *2.

8

sentence do indeed exist. *See* U.S.S.G. § 1B1.13 ("Extraordinary and compelling reasons exist" when "[t]he defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together . . . are similar in gravity" to the enumerated examples."). The government concedes that the remaining factors are in Garcia Nava's favor. ECF No. 60 at 7 ("The United States has no reason to dispute Mr. Garica's rehabilitation, lack of serious disciplinary history, strong family support and release plan, history of serious medical issues, or their exacerbation by the COVID-19 pandemic.").

First, Garcia Nava has demonstrated rehabilitation by making excellent use of his time in prison, completing over 700 hours of electrician training as of June 2023 and finishing the coursework towards his GED. ECF No. 54-1 at 53. And he has no serious disciplinary history in prison. *Id.* at 46, 49. Second, he suffers ongoing complications from his third-degree burns, diabetes, gout, and hyperlipidemia, for which he does not always receive timely treatment in prison, ECF No. 54 at 33-34. ECF No. 59 at 57 (sealed). His time in prison has therefore been somewhat more punitive than that of the average defendant. Third, the harsher custodial conditions of the COVID-19 pandemic contribute, though only marginally, to the Court's finding of extraordinary and compelling reasons. And finally, while not part of the Court's calculation of extraordinary and compelling reasons, the Court notes that Garcia Nava has a place to stay, family support, and an open offer of employment upon release. *Id.* at 77; ECF No. 55 at 3. Together with the sentencing disparity, these factors constitute extraordinary and compelling reasons to justify a sentence reduction.

The Court further determines that Garcia Nava "is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(a)(2). The underlying crime was non-violent, ECF No. 34 at 4, Garcia Nava has not previously committed a violent crime, *id.* at 7, and he has no serious disciplinary history in prison, ECF No. 54-1 at 46, 49. The

briefing and record contain no suggestion that Garcia Nava poses a danger to anyone, *see* ECF No. 60 (absence).

Thus, having considered the nature and circumstances of the offense, deterrence, sentencing disparity, and the history and characteristics of this defendant, as well as the other 18 U.S.C. § 3553(a) factors, the court finds that extraordinary and compelling reasons exist—consistent with the Sentencing Guidelines policy statements—to warrant a reduction in sentence for Garcia Nava.

## CONCLUSION

The Court GRANTS Garcia Nava's motion. Garcia Nava's sentence is MODIFIED and REDUCED to time served pursuant to 18 U.S.C. § 3582(c), effective immediately. His term of supervised release and conditions remain the same.

Garcia Nava is directed to report, in person or by phone, to the U.S. Probation Office at 101 West Broadway, Suite 700, San Diego, CA 92101 within 72 hours of release from imprisonment. He may call the Probation Office at 619-557-5510 (main office) or 619-557-5739 (supervision division).

**IT IS SO ORDERED.**

Dated: January 19, 2024

Hon. Gonzalo P. Curiel
United States District Judge